**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JOE HAND PROMOTIONS, INC., as** | § | |
| **Broadcast Licensee of the April 18,** | § | |
| **2009 UFC 97: "Redemption":** | § | |
| **Silva/Leites Event,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-12-CV-141-KC** |
| | § | |
| **STEVEN ADAME, Individually and** | § | |
| **d/b/a MI OFICINA NITE CLUB,** | § | |
| | § | |
| **Defendant**. | § | |

**ORDER**

On this day, the Court considered "Defendants' Verified Motion to Vacate the Clerk's Default Judgment" ("Motion"), ECF No. 12, and "Plaintiff's Motion for Final Default Judgment & Brief in Support" ("Motion for Default"), ECF No. 9. For the reasons set forth herein, the Court **GRANTS** the Motion. The Court **DENIES** the Motion for Default as moot.

**I.     BACKGROUND**

Plaintiff alleges that Defendant unlawfully and willfully intercepted and published the telecast of the April 18, 2009, Ultimate Fighting Championship 97: "Redemption": Silva/Leites (the "Event") at Mi Oficina Nite Club (the "Establishment"). Pl. Original Compl. ("Complaint") ¶¶ 5, 9, 11-15, ECF No. 1. Accordingly, Plaintiff filed suit on April 18, 2012, alleging violations of the Federal Communications Act ("FCA"), 47 U.S.C. §§ 553 and 605. *See* Compl. ¶¶ 16-17. A summons against Defendant was issued on April 19, 2012, served on April 26, 2012, and

returned executed on July 9, 2012.  Summons in a Civil Action 1, ECF No. 4; Summons in a

Civil Action 1-2, ECF No. 7.

On May 14, 2012, Defendant attempted to file an answer to Plaintiff's Complaint.  *See*

Answer, ECF No. 5.  However, the answer contained the incorrect case number and case style,

and therefore, the answer was deemed deficient.  *See* Answer; Deficiency Notice 1, ECF No. 6.

The Court issued a deficiency notice notifying Defendant that he must refile the document

"immediately."  *See* Deficiency Notice 1.  Defendant did not refile the answer.

On July 9, 2012, Plaintiff moved for an entry of default and default judgment.  Pl.'s Req.

for Entry of Default ("Motion for Entry"), ECF No. 8; Pl.'s Mot. for Final Default J. & Br. in

Supp. ("Motion for Default"), ECF No. 9.  The Clerk issued an entry of default on July 10, 2012.

Clerk's Entry of Default ("Entry of Default"), ECF No. 10.  As of the date of this Order, the

Court has not ruled on the Motion for Default or issued a default judgment.  On July 17, 2012,

Defendant moved to vacate the Entry of Default.[1]  *See* Mot.  Plaintiff did not file a response to

the Motion.[2]

---

[1]           Defendant's Motion seeks to "[v]acate the Clerk's Default Judgment under Fed.
R. Civ. P. 60(b)(1)" and states that the Clerk "entered a Default Judgment on
July 10, 2012."  Mot. 1.  However, this is inaccurate.  As described by the Fifth
Circuit:

> A default occurs when a defendant has failed to plead or
> otherwise respond to the complaint within the time required by
> the Federal Rules.  An entry of default is what the clerk enters
> when the default is established by affidavit or otherwise.
> After defendant's default has been entered, plaintiff may apply
> for a judgment based on such default.  This is a default
> judgment.

*N. Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (internal citations
omitted).
Here, the Clerk issued an entry of default, not a default judgment. Further, the
Court has not issued a default judgment. Accordingly, the Court construes the
Motion as requesting the Court vacate the entry of default.

[2]           Defendant represents that he attempted to contact Plaintiff's attorneys, but has
"not been able to make contact" with them.  Mot. 2.  Accordingly, Defendant
represents that "[i]t is unknown whether or not counsel will object."  *Id.*

2

## II.    DISCUSSION

### A.    Standard

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  Good cause "is not susceptible of precise definition, and no fixed, rigid standard can anticipate all of the situations that may occasion the failure of a party to answer a complaint timely."  *In the Matter of Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992); *see also United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985) (explaining that the standard to set aside an entry of default is less rigorous than the "excusable neglect" standard for setting aside a default judgment under Rule 60(b)).[3]  Informing the good cause inquiry is the "policy in favor of resolving cases on their merits and against the use of default judgments."  *Rogers v. Hartford Life and Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999).  Accordingly, "where there are no intervening equities any doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits."  *Lacy v. Sitel Corp.*, 227 F.3d 290, 291 (5th Cir. 2000) (quoting *Gen. Tel. Corp. v Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960)).  Ultimately, relief from default is within the discretion of the district court.  *Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969).

---

[3]        "[A] motion to set aside an entry of default is similar to a motion to set aside a default judgment under Rule 60(b)."  *E.g.*, *SnoWizard, Inc. v. Robinson*, No. 11-515, 2012 WL 1748154, at *1 (E.D. La. May 16, 2012) (citing *In re OCA*, 551 F.3d 359, 370 (5th Cir. 2008)); *United States v. Tellez*, 678 F. Supp. 2d 437, 439 (W.D. Tex. 2009) (citing *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992)) ("[C]ourts apply essentially the same standard to motions to set aside a default and a judgment by default, [though] the former is more readily granted than a motion to set aside a default judgment.").  Indeed, the Fifth Circuit has previously interpreted Rule 60(b) as incorporating Rule 55(c)'s good cause standard, although the fact that Rule 55(c) was amended in 2007 calls this authority into question.  *In re Marinez*, 589 F.3d 772, 777 (5th Cir. 2009).  Because of the similarity between the two standards, the Court uses some authority regarding Rule 60(b) to support the analysis in this opinion.

"In determining whether to set aside a default decree, the district court should consider whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Dierschke*, 975 F.2d at 183 (quoting *One Parcel*, 763 F.2d at 183).  However, these three factors "are not talismanic." *Id.* at 184.  "Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." *Id.*

### B.      Analysis

#### 1.      Defendant's default was not willful

Defendant argues that his failure to file a response was not intentional or willful.  Defs.' Mem. in Supp. of Mot. to Vacate the Clerk's Default J. ("Memorandum") ¶ 5(c), ECF No. 13.  Defendant explains that he filed an answer with the Clerk under an incorrect case number, and that defense counsel's office staff did not properly notify Defendant's attorney of the Deficiency Notice.  *Id.*  Defendant contends that defense counsel was on vacation from June 7, 2012 to July 9, 2012, thus further delaying the matter.  *Id.*

Defendant's default appears to be the result of mistake rather than a willful action.  *See Lacy*, 227 F.3d at 291.  First, the record indicates that Defendant did in fact attempt to file an answer.  *See generally* Answer.  Additionally, Defendant claims that because defense counsel's "office staff failed to place [the Deficiency Notice] on the 'Urgent Action' list," defense counsel was not "properly notified" of the answer's deficiency.  Mot. 1; Mem. ¶ 5(c).  Such a mistake does not suffice to establish willful default.  *See, e.g.*, *Owens-Illinois, Inc v. T & N Ltd.*, 191 F.R.D. 522, 528 (E.D. Tex. 2000) (holding a "mislaid compl[ai]nt was the product of isolated human error" in setting aside a default judgment under Rule 60(b)(1)).  Thus, although

4

Defendant did not respond to the Deficiency Notice for over two months, this failure to respond in a timely fashion was at most negligent and does not rise to the level of "gross carelessness." *See id.* at 525; *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004) (stating that, in the context of a Rule 60(b)(1) motion, "attorney carelessness can constitute 'excusable neglect'"). Accordingly, this factor weighs in favor of setting aside the Entry of Default.

### 2.    Setting aside the default would not prejudice Plaintiff

Defendant contends that vacating the Entry of Default will not prejudice Plaintiff because it would merely require Plaintiff to litigate the case.  *See* Mem. ¶ 5(a).  Defendant also claims that discovery will not be hindered because the alleged events giving rise to the action occurred recently.  *Id.*

The Court agrees with Defendant.  Requiring a plaintiff to litigate its case does not constitute prejudice.  *Lacy*, 227 F.3d at 293 ("[M]ere delay [of the case] does not alone constitute prejudice."); *One Parcel*, 763 F.2d at 183 (holding that requiring the plaintiff to litigate the action is insufficiently prejudicial to require a default decree to stand); *Gen. Tel. Corp.*, 277 F.2d at 921 (finding no prejudice because "the setting aside of the default has done no harm to plaintiff except to require it to prove its case").  Further, there is no indication that vacating the Entry of Default will affect Plaintiff's discovery.  *Lacy*, 227 F.3d at 293 (quoting *Berthelsen v. Kane*, 907 F. 2d 617, 620) (holding there was no prejudice when the plaintiff did not show that vacating the default would "result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion").

Plaintiff has not responded to Defendant's Motion, and therefore has not presented any other argument with respect to prejudice.  In the absence of a response, the Court is "reluctant to

speculate as to possible prejudices beyond the readily-apparent fact that [Plaintiff] would now be required to litigate this case on the merits." *United States v. Tellez*, 678 F. Supp. 2d 437, 442 (W.D. Tex. 2009). Accordingly, this factor weighs in favor of granting Defendant's motion to vacate the Entry of Default.

### 3. Defendant presents a meritorious defense

If a defaulting party fails to present a meritorious defense, a court may refuse to grant relief on this ground alone. *Id.* at 442-43 (citing *In re OCA, Inc.*, 551 F.3d 359, 370 (5th Cir. 2008); *Rogers*, 167 F.3d at 936). "In determining whether a meritorious defense exists, '[t]he underlying concern is . . . whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" *In re OCA*, 551 F.3d at 373 (quoting *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008)) (discussing meritorious defense standard for a Rule 60(b) motion). A defendant's allegations are meritorious if they contain "'even a hint of a suggestion' which proven at trial, would constitute a complete defense." *Side by Side Redevelopment, Inc. v. City of New Orleans*, No. 09-03861, 2010 WL 375237, at *3 (E.D. La. Jan. 25, 2010) (quoting *Howard v. United States*, No. 93-1520, 1993 WL 353506, at *3 (E.D. La. Sep. 8, 1993)); *Robinson v. Griffith*, 108 F.R.D. 152, 155 (W.D. La. 1985). Indeed, even an "obtuse" showing of a meritorious defense will suffice. *One Parcel*, 763 F.2d at 183.

Here, Plaintiff argues that Defendant violated §§ 553 and 605 of the FCA by intercepting and broadcasting the Event to patrons in Defendants' Establishment. Compl. ¶¶ 11, 16-17. Section 553 of the FCA prohibits any unauthorized person from "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system."

47 U.S.C. § 553(a)(1).  In order to establish liability under § 553, Plaintiff must show that "(a) the Event was shown in Defendant['s] Establishment and (b) that such exhibition of the Event was not authorized" by Plaintiff.  *See J & J Sports Prods., Inc. v. Q Cafe, Inc.*, No. 3:10-CV-02006-L, 2012 WL 215282, at *3 (N.D. Tex. Jan. 25, 2012) (citing *King Vision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999)); *Zuffa, LLC v. Trappey*, No. 11-0006, 2012 WL 1014690, at *4 (W.D. La. Mar. 22, 2012).  Additionally, § 605 of the FCA prohibits any unauthorized person from "divulg[ing] or publish[ing] the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person."  47 U.S.C. § 605(a).  To state a claim under § 605, the plaintiff must establish that the defendants "(1) received, assisted in receiving, transmitted, or assisted in transmitting an interstate communication by wire or radio, and (2) broadcast, displayed, or divulged that communication to (3) at least one other person (4) without authorization."  *Joe Hand Promotions, Inc. v. Tin Cup Sports Bar, Inc.*, No. 11-01929, 2012 WL 2572504, at *2 (S.D. Tex. June 28, 2012) (citing *Entm't by J & J, Inc. v. AlWaha Enters.*, 219 F. Supp. 2d 769, 773-74 (S.D. Tex. 2002)); *see Joe Hand Promotions, Inc. v. Chapa*, No. H-08-422, 2009 WL 2215124, at *3 (S.D. Tex. July 22, 2009).

As his defense, Defendant asserts that he did not operate, own, or manage the Establishment at the time of the alleged violations, nor was he was aware that the Event was taking place or that it was shown in the Establishment.  Mem. ¶ 5(b).  In addition, Defendant denies misappropriation of the Event, denies that he infringed on Plaintiff's exclusive right to air the Event without proper payment, and denies any willful action with purpose of securing commercial and financial advantage.  *Id.*  Finally, Defendant asserts that if the alleged

7

transmission of the Event did occur, Defendant had no knowledge of either the broadcast or the violation.  *Id.*

"The Communications Act is a strict liability statute."  *Joe Hand Promotions, Inc. v. Daddy O's Bar & Grill, LLC*, No. H-11-2493, 2012 WL 3262429, at *2 (S.D. Tex. Aug. 8, 2012); *Joe Hand Promotions, Inc. v. Lee*, No. H-11-2904, 2012 WL 1909348, at *3 (S.D. Tex. May 24, 2012); *J & J Sports Prods., Inc. v. Delgado*, No. 2:10-2517 WBS, 2012 WL 371630, at *3 (E.D. Cal. Feb. 3, 2012); *see also J&J Sports Prods., Inc. v. Live Oak Cnty. Post No. 6119 Veterans of Foreign Wars*, No. C-08-270, 2009 WL 1437803, at *3 (S.D. Tex. May 20, 2009) ("[V]iolations of sections 553 and 605 need not be knowing."); *Top Rank, Inc. v. Gutierrez*, 236 F. Supp. 2d 637, 648 (W.D. Tex. 2001) ("[Section 553] does not require a knowing violation."). To the extent it is relevant, Defendant's knowledge and intent only affect the question of damages, not liability.  *See Zuffa*, 2012 WL 1014690, at *4; *see also* 47 U.S.C. § 553(c)(3)(B) (providing that willful violations allow courts to increase the damages award); 47 U.S.C. § 605(e)(3)(C)(ii) (same).  Assuming without deciding that a meritorious defense for Rule 55(c) purposes must be a defense to liability rather than a defense for damages purposes, Defendant's claim that he had no knowledge of either the broadcast or the violation is not a meritorious defense.

However, Defendant apparently denies that the Event was shown without securing licensing and making payments to Plaintiff.  *See* Mem. ¶ 5(b) (denying that Defendant "infringed on Plaintiff's exclusive rights while avoiding proper payment to Plaintiff").  If true, this may negate an essential element of Plaintiff's claims — namely, that the Event was shown without Plaintiff's authorization.  *See Daddy O's*, 2012 WL 3262429, at *2 ("[P]laintiff need only show

8

that the Event was shown in the defendant's establishment *without the plaintiff's authorization*." (emphasis added)); *Q Cafe, Inc.*, 2012 WL 215282, at *3 (stating lack of authorization is an element of liability under § 553); *Tin Cup Sports Bar, Inc.*, 2012 WL 2572504, at *2 (stating lack of authorization is an element of liability under § 605).  Defendant's argument therefore constitute a meritorious defense.

Additionally, Plaintiff sues Defendant in his individual capacity, and therefore must show that Defendant "had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct."  *See* Compl. 1 (suing Defendant "individually"); *Joe Hand Promotions, Inc. v. Alvarado*, No. CV F 10-0907 LJO JLT, 2011 WL 1740536, at *7 (E.D. Cal. May 4, 2011) (quoting *J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009)); *see, e.g.*, *J & J Sports Prods., Inc. v. MayrealII, LLC*, No. ELH-11-3345, 2012 WL 346649, at *3 (D. Md. Feb. 1, 2012); *Joe Hand Promotions, Inc. v. Young*, No. 5:09-CV-157, 2010 WL 1979388, at *4 (W.D. Ky. May 14, 2010); *J & J Sports Prods., Inc. v. Betancourt*, No. 08CV937JLS (POR), 2009 WL 3416431, at *2 (S.D. Cal. Oct. 20, 2009); *Joe Hand Promotions, Inc. v. Phillips*, No. 06CIV3624BSJJCF, 2007 WL 2030285, at *3 (S.D.N.Y. July 16, 2007), *report and recommendation adopted*, No. 06 CIV 3624 BSJ, 2007 WL 2245351 (S.D.N.Y. Aug. 3, 2007).  Indeed, district courts in other circuits considering the issue have held that there is no individual liability if a defendant does not "own, operate or control the bar at the time of the telecast."  *See id.* at *1, *7; *Joe Hand Promotions, Inc. v. Clifton*, No. 1:10-CV-02388 LJO, 2011 WL 4500862, at *4 (E.D. Cal. Sept. 27, 2011).  Thus, Defendant's assertion that he did not own, operate, or manage the Establishment at the time the Event was broadcasted constitutes a meritorious defense for Rule 55(c) purposes.  *See Clifton*, 2011 WL 4500862, at *4

("[The defendant] has presented facts that she was not the owner at the time the Program was broadcast. Thus, she has presented facts that 'would constitute a defense.'").

Plaintiff has presented a meritorious defense by arguing Plaintiff authorized any alleged showing of the Event, and claiming that Defendant did not exercise the control necessary to establish liability. This factor therefore weighs in favor of vacating the Entry of Default.

### 4.    Other considerations

"Other factors that a court may consider include whether 'the public interest was implicated,' whether 'there was a significant financial loss to the defendant,' and whether 'the defendant acted expeditiously to correct the default.'" *Dierschke*, 975 F.2d at 184. Defendant does not appear to have suffered a significant financial loss as a result of the default. However, Defendant acted expeditiously to correct the Entry of Default by filing a motion with the Court less than a week after the Entry of Default. *See* Entry of Default 1 (filed on July 10, 2012); Def.'s Mot. for Leave of Court to File Def.'s Mot. to Vacate Clerk's Default and Mem. in Supp. of Mot. to Vacate Clerk's Default 1, ECF No. 11 (filed July 16, 2012). Further, as discussed, the Fifth Circuit has expressed a clear preference for the resolution of cases on their merits rather than through the entry of default and subsequent default judgments. *Rogers*, 167 F.3d at 936. Accordingly, the last factor weighs in favor of granting Defendant's Motion.

### 5.    Summary

In sum, the Court holds that all four factors weigh in favor granting Defendant's Motion. Accordingly, Defendant has shown good cause to vacate the Clerk's Entry of Default. *See Dierschke*, 975 F.2d at 183.

## III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** "Defendants' Verified Motion to Vacate the Clerk's Default Judgment," ECF No. 12.  The Court **DENIES** as moot "Plaintiff's Motion for Final Default Judgment & Brief in Support," ECF No. 9.

**IT IS FURTHER ORDERED** that the Court **VACATES** the Clerk's Entry of Default, ECF No. 10.

**SO ORDERED**.

SIGNED this 16th day of August, 2012.


KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE